UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Heather Cheney,

     Plaintiff,

     v.                                               Civil Action No. 5:10-CV-174

Commissioner of Social Security,

     Defendant.

## REPORT AND RECOMMENDATION
(Docs. 10, 11)

Plaintiff Heather Cheney brings this action under 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Cheney's motion seeking an order reversing the Commissioner's decision (Doc. 10), and the Commissioner's motion seeking an order affirming the decision (Doc. 11).

For the reasons set forth below, I recommend that Cheney's motion to reverse (Doc. 10) be granted, and the Commissioner's motion to affirm (Doc. 11) be denied. Pursuant to Local Rule 7(a)(6), and no party having made a written request for oral argument, I find that oral argument is not required.

## Background

Cheney was born on September 22, 1987, and thus was twenty years old on the alleged disability onset date of September 29, 2007. (Administrative Record ("AR") 52,

102, 125.)  She completed high school, and has worked as a supermarket cashier and for brief periods as a mail stuffer, a chambermaid, and a laborer at Montgomery Wire and Home Depot.  (AR 27-31, 52, 116-21, 131, 136.)  Cheney's medical providers have consistently diagnosed her with schizoaffective disorder and borderline personality disorder.  (AR 363, 439.)  She claims she has suffered from chronic auditory and visual hallucinations and depression at least since she was an adolescent.[1]  (AR 337.)  The record reflects that Cheney has attempted suicide on two occasions, and has had two psychiatric hospitalizations.  (*Id.*)  She has described to her medical providers feelings of emptiness, passive suicidal ideation, low motivation, poor concentration, chronic interpersonal conflicts, and mood swings.  (*Id.*)

In October 2007, Cheney applied for disability insurance and supplemental security income benefits, alleging that she became unable to work on September 29, 2007 as a result of her schizoaffective disorder.  (AR 102-15, 125, 129-30.)  She asserted that this condition limited her ability to work because it caused her to be paranoid, delusional, have difficulty focusing and working with other people, and have thoughts of hurting herself.  (AR 130.)  Cheney's disability application was denied initially and upon reconsideration, and she timely requested an administrative hearing, which occurred in February 2010.  (AR 21-51, 52-54, 56-61, 64.)  She appeared and testified at the hearing, and was represented by counsel.  (AR 21-51.)

---

[1]  Cheney's medical providers have consistently questioned the existence of these hallucinations, noting that they are inconsistent with her presentation during treatment interviews.  (*See, e.g.,* AR 320, 358, 362, 415, 438.)

On February 24, 2010, Administrative Law Judge ("ALJ") Paul Martin issued a decision finding that Cheney was not disabled under the Social Security Act, as described in detail below.  (AR 10-17.)  Thereafter, the Decision Review Board informed Cheney that it had not completed its review during the prescribed period, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1-3.)  Having exhausted her administrative remedies, Cheney filed her Complaint in the instant action on July 21, 2010.  (*See* Doc. 1.)

## ALJ Determination

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the fourth step requires the ALJ to consider whether the claimant's "residual functional capacity" ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  The

fifth and final step requires the ALJ to determine whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual functional capacity").

Employing this five-step analysis, ALJ Martin first determined that, although Cheney had worked after the alleged disability onset date, this work activity did not rise to the level of substantial gainful activity, and thus she had not engaged in substantial gainful activity since her alleged onset date of September 29, 2007.  (AR 12-13.)  At step two, the ALJ found that Cheney had two severe impairments: schizoaffective disorder and borderline personality disorder.  (AR 12.)  At step three, the ALJ found that Cheney did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (AR 13-15.)

Next, the ALJ determined that Cheney had the RFC to perform "a full range of work at all exertional levels but with the following exertional limitations: the claimant is limited to performing simple 1-2 step instructions with no more than brief interaction with co-workers and supervisors, but with no close supervision by a supervisor."  (AR 15.)  The ALJ explained that, although Cheney's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning

4

the intensity, persistence, and limiting effects of those symptoms "are not credible to the extent they are inconsistent with the above [RFC] assessment." (AR 16.) In making this RFC assessment, the ALJ noted that Cheney's credibility was called into question by multiple medical providers; there was a lack of mental health treatment records since 2007; and she was "quite active by self-report in April 2008 even assisting her fiancé in looking for work." (*Id.*)

At step four, the ALJ determined that Cheney is able to perform her past relevant work as a chambermaid and mail stuffer, which jobs she performed "sufficiently long enough for the[m] . . . to meet the criteria required to be considered past relevant work." (AR 17.) Without making a step-five determination regarding whether Cheney could perform "any other work," the ALJ concluded that Cheney had not been under a disability, as defined in the Social Security Act, from September 29, 2007 through the date of the ALJ's decision. (*Id.*)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Poupore*, 566 F.3d at 305.

Although the reviewing court's role with respect to the Commissioner's disability decision is "quite limited[,] and substantial deference is to be afforded the Commissioner's decision," *Hernandez v. Barnhart*, No. 05 Civ. 9586, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (quotation marks and citation omitted), the Social Security Act "must be construed liberally because it is a remedial statute that is intended to include, rather than exclude, potential recipients of benefits," *Jones v. Apfel*, 66 F. Supp. 2d 518, 522 (S.D.N.Y. 1999); *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981) ("In its deliberations the District Court should consider the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied.").

## Analysis

Cheney makes two principal arguments: (1) the ALJ erroneously failed to discern whether her chambermaid and mail stuffer jobs constituted "unsuccessful work attempts," and thus improperly considered them "past relevant work"; and (2) the ALJ's RFC determination is unsupported by substantial evidence, and does not reflect the severity of Cheney's mental health issues.  In response, the Commissioner contends that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards.  For the reasons explained below, I recommend finding in favor of Cheney.

## I.      Past Relevant Work/Unsuccessful Work Attempts

Cheney argues that the ALJ erred in treating her chambermaid and mail stuffer jobs as "past relevant work" without first considering whether they constituted "unsuccessful work attempts."  The Commissioner contends that Cheney failed to meet her burden of demonstrating that these jobs did not constitute past relevant work; and even assuming they did, Cheney has not shown harmful error.

It is the claimant's burden to show that she is incapable of performing her past relevant work, *see, e.g., Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986),[2] which the regulations define as "work that [the claimant] ha[s] done within the past 15 years, *that*

---

[2]   The parties debate which of them holds the "burden of proof" with respect to the past relevant work/unsuccessful work attempt issue.  (*See* Doc. 11 at 16-18; Doc. 12 at 3-4.)  Although the claimant bears the burden of demonstrating an inability to return to his or her past relevant work, *Bapp*, 802 F.2d at 604, the ALJ has a general "duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits," *Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009).  Given these parallel obligations, and because proceedings involving social security benefits "are not designed to be adversarial," the concept of "burden of proof" in these cases "is particularly elusive." *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

7

*was substantial gainful activity*, and that lasted long enough for [the claimant] to learn to do it," 20 C.F.R. § 404.1560(b)(1) (emphasis added); *see* Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *1 (1982).  In this case, the evidence demonstrates that Cheney performed the chambermaid and mail stuffer jobs within the past fifteen years, and those jobs lasted long enough for Cheney to learn to do them.  (*See* AR 45-46, 131; Department of Labor, Dictionary of Occupational Titles ("DOT") (4th ed. 1991) (tabber, #794.687-058, *available at* 1991 WL 681328) (cleaner, housekeeping, #323.687-014, *available at* 1991 WL 672783).)  The contested issue is whether these jobs qualified as substantial gainful activity ("SGA"), and more specifically, whether they constituted unsuccessful work attempts.

Work activity does not qualify as SGA, or "past relevant work," if it is found to be an "unsuccessful work attempt."  *Thompson v. Astrue*, No. 06-CV-1328 (GLS/DEP), 2009 WL 3334304, at *2 (N.D.N.Y. Oct. 14, 2009) (citing 20 C.F.R. §§ 404.1574(c), 416.974(c)), *vacated in part on other grounds by* 2010 WL 502868 (N.D.N.Y. Feb. 9, 2010), *vacated and remanded on other grounds by* 2011 WL 1086651 (2d Cir. Mar. 25, 2011).  Initially, for work activity to be considered an unsuccessful work attempt, the claimant's impairment must cause a significant break in the continuity of his or her work. *Id.*  The work activity will then qualify as an unsuccessful work attempt only if, after working for a period of three months or less, the work was terminated or markedly reduced *due to the claimant's impairment* or due to the removal of special conditions essential to further performance of the work.  20 C.F.R. §§ 404.1574(c)(3), 404.1575(d)(3); SSR 05-02, 2005 WL 568616 (Feb. 28, 2005).  If the employment lasted

8

between three and six months, it will be considered an unsuccessful work attempt if it

ended *due to the claimant's impairment* or due to the removal of special conditions which

permitted the claimant to work, and: (1) the claimant had frequent absences because of

her impairment; (2) the claimant's work was unsatisfactory because of her impairment;

(3) the claimant engaged in the work during a period of temporary remission; or (4) the

work was performed under special conditions which were removed.  20 C.F.R. §§

404.1574(c)(4), 404.1575(d)(4); SSR 05-02.  Work performed at the substantial gainful

activity level for more than six months is not considered an unsuccessful work attempt,

regardless of the reason for its termination or reduction below the substantial gainful

activity level.  20 C.F.R. §§ 404.1574(c)(5), 404.1575(d)(5); SSR 05-02.

     SSR 05-02 was issued to clarify Social Security Administration ("SSA") policy

for determining whether SGA that is discontinued or reduced below a specified level may

be considered an unsuccessful work attempt.  SSR 05-02, at *1.  In that ruling, the SSA

explains:  "The [unsuccessful work attempt] concept was designed to provide us an

equitable means . . . to disregard relatively brief work attempts that do not demonstrate

sustained SGA."  *Id.*  The ruling discusses the Commissioner's duty to develop the record

in connection with determining whether a claimant's job ended as a result of his or her

impairment:

>     When we consider why your work effort ended or was reduced to
> the non-SGA level, we do not rely solely on information from you.
> Therefore, *if we do not already have impartial supporting evidence, we will
> seek confirmation from your employer.  If the information from your
> employer is inconclusive or is not available, we may seek confirmation of
> the reason you discontinued or reduced your work with a physician or
> other medical source.*  After being apprised of the circumstances, the

physician or other medical source could state whether, in his or her opinion or according to the records, your work discontinuance or reduction was due to your impairment.

Answers to questions such as the following will help to verify the nature and duration of your work and the reason it ended or was reduced:

a. When and why was the SGA-level work interrupted, reduced or stopped…

b. If special working conditions (as described in the preceding section) were removed, what were those conditions or concessions… When, how and why were they changed…

c. Were there frequent absences from work… Were days and hours of work irregular and, if so, why…

d. Was job performance unsatisfactory because of the impairment…

e. Did the employer reduce your duties, responsibilities or earnings because of your impairment… [and]

f. When your work effort ended, was the continuity of employment broken… Did the employer grant sick leave or hold the position open for your return… . . . .

*Id.* at *3-4.

Seemingly without considering any of these issues, ALJ Martin found that Cheney's jobs as chambermaid and mail stuffer constituted past relevant work and thus were not unsuccessful work attempts. Specifically, in the section of his decision where he considered whether Cheney was able to perform her past relevant work, the ALJ made the following limited observations: (a) the Vocational Expert ("VE") testified that Cheney performed the chambermaid and mail stuffer jobs "sufficiently long enough for

[them] to meet the criteria required to be considered past relevant work"[3]; (b) the VE testified that these jobs "do[] not require the performance of work related activities precluded by [Cheney's] [RFC]"; and (c) comparing Cheney's RFC with the physical and mental demands of the chambermaid and mail stuffer jobs, Cheney was able to perform them "as actually and generally performed." (AR 17; *see also* AR 45, 47-48.) As noted earlier, the ALJ ended his analysis here (at step four), and did not proceed to the fifth step of considering whether Cheney could do "any other work."[4]

The ALJ's analysis is flawed. Despite Cheney's counsel specifically raising the "unsuccessful work attempt" issue before and at the administrative hearing (*see* AR 26, 51, 174), and although the record demonstrates that Cheney's chambermaid and mail stuffer jobs lasted less than six months respectively (*see* AR 29-30, 46, 131, 160), the ALJ did not analyze whether these jobs met the definition of "unsuccessful work attempts" before determining that they constituted past relevant work (*see* AR 17). At a minimum, the ALJ should have inquired at the administrative hearing as to when and

---

[3] In fact, the VE testified only that Cheney performed the *mail stuffer* (also referred to as "inserter" and "tabber") job long enough to meet the criteria required to be considered past relevant work. Specifically, the VE stated: "the . . . inserter is a brief demonstration, SVP ["specific vocational preparation"] of one, so any amount of time on the job she could have learned it." (AR 45.) *See* Department of Labor, DOT (4th ed. 1991) (tabber, #794.687-058, *available at* 1991 WL 681328). The ALJ did not, however, follow up with a specific question asking the VE whether the *chambermaid* job similarly required only a "brief demonstration" and had an SVP level of one, and the VE did not testify to that effect. In fact, the chambermaid job has an SVP level of two. *See* Department of Labor, DOT (4th ed. 1991) (cleaner, housekeeping, #323.687-014, *available at* 1991 WL 672783). Nonetheless, the ALJ's omission is harmless, given that the DOT states that only one month, at most, is required to learn a job with an SVP level of two, and Cheney stated in a Disability Report form that she held the chambermaid job for approximately two months ("10/06-12/06"). (AR 131.)

[4] Had the ALJ proceeded to the fifth step of the sequential process, any error at step four would have been harmless. *See Thompson*, 2010 WL 502868, at *1 ("[A] deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five.").

why Cheney's chambermaid and mail stuffer jobs ended, i.e., whether Cheney was terminated from or ended these jobs as a result of her impairments. *See* SSR 05-02, at *4. He also should have inquired as to whether Cheney was frequently absent from these jobs, and if so, whether these absences were related to or resulted from Cheney's impairments; and whether Cheney's job performance with respect to these jobs was unsatisfactory because of her impairments. *Id.* If Cheney's responses to these questions did not sufficiently clarify why the chambermaid and mail stuffer jobs ended or there was not impartial evidence in the record to support Cheney's responses, the ALJ should have developed the record further, including seeking information from Cheney's employers. *Id.* at *3; *see Lenczewski v. Astrue*, No. 08-CV-0862-A, 2010 WL 2472548, at *3-4 (W.D.N.Y. June 15, 2010) (ALJ mailed questionnaires to seventeen former employers requesting dates of employment, the reason employment ended, job description, special considerations given, job performance, and an earnings summary). If that information was inconclusive or not available, the ALJ should have sought the assistance of a physician or other medical source. *Id.*

Instead, the ALJ appears to have relied almost exclusively on the VE's limited testimony and Cheney's imprecise statements at the administrative hearing in finding that the chambermaid and mail stuffer jobs constituted past relevant work. At the administrative hearing, following up on a statement made by Cheney about her mail stuffer job ("I was fired, I didn't have a reason for it, they didn't tell me why"), the ALJ appropriately asked Cheney why she was fired from that job. (AR 29.) He did not, however, ask the same question with respect to Cheney's chambermaid job. And, despite

12

the ambiguity of Cheney's response to the question regarding why she was fired from the mail stuffer job ("I actually don't [know why I was fired from the mail stuffer job], I think it, I have a hard time focusing.  I get very distracted.  That may be it but I'm not entirely positive."), the ALJ did not ask any follow-up questions, and did not attempt to develop the record on the issue.  (*Id.*)  More is required of an ALJ in consideration of whether a work attempt was unsuccessful.  One court stated:  "[T]he [Social Security] Act requires more than just statements from the plaintiff to establish the reason(s) employment was ended.  The ALJ must seek corroboration of these statements from subjective evidence or statements obtained from the claimant[']s employers."  *Lenczewski*, 2010 WL 2472548, at *5 (citing SSR 05-02; SSR 84-25, 1984 WL 49799 (1984); *Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997)).

The ALJ's error is not harmless.  Although the evidence demonstrates that Cheney's earnings as a chambermaid and mail stuffer, respectively, met the required SGA earnings standard (*see* AR 131, 20 C.F.R. § 404.1574(b)), and although these jobs otherwise satisfy the "past relevant work" criteria discussed above, the record suggests that these jobs may qualify as unsuccessful work attempts, meaning they may have ended as a result of Cheney's mental impairments, including personality disorder and schizoaffective disorder.  *See Thompson*, 2009 WL 3334304, at *2 (remanding because record suggested job ALJ found constituted past relevant work "may qualify as an unsuccessful work attempt"); *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) (remanding because evidence supported conclusion that symptoms of claimant's personality disorder made working with others impossible and thus claimant's work

13

effort constituted an unsuccessful work attempt).  Specifically, mental health provider

Sarah Davis reported in an Intake Assessment form that Cheney advised that she:

> worked at Upper Valley Press, collating flyers, for three months.  She
> reports she was fired from that position.  She reports she often felt bored
> and would talk with her co-workers often.  She reports she was not given a
> reason for being terminated.  She then went to work for the Courtyard
> Marriott in Lebanon, NH as a housekeeper.  After three months of
> employment, she quit her job due to disliking her co-workers and the long
> commute to work.

(AR 347.)  In another report, Davis noted that Cheney was "[f]ired from several jobs after

short trials due to conflict and poor performance."  (AR 353.)  In a Psychiatric

Consultation report, psychiatrist Dr. Erinn Fellner made the same notation.  (AR 338.)

Moreover, at the administrative hearing, Cheney testified regarding her difficulty getting

along with people, including co-workers, stating:

> I will get along with people for a while, but if like criticism will, with me
> kind of turn into almost like a blame kind of thing.  Like, well, either you're
> not here enough or you're watching me, or, it's never me.  And that tends to
> cause waves with co-workers and I tend to, after a while, not get along with
> people very well at all.

(AR 39-40.)  Likewise, in her Function Report, Cheney stated that she has problems

getting along with family, friends, and others, as she "fight[s], argue[s] + nit-pick[s]."

(AR 143.)

    This evidence demonstrates that Cheney's brief employment as both a

chambermaid and a mail stuffer may have been terminated due to her inability to relate to

or get along with co-workers.  As discussed *infra*, this inability to work with others at

least arguably resulted from Cheney's mental illness.  In concluding that Cheney was

capable of performing these jobs, however, the ALJ failed to properly consider whether

they constituted "unsuccessful work attempts."  On remand, the ALJ should reconsider and develop the record further with respect to this issue.  If the ALJ then determines that the jobs were not "unsuccessful work attempts," in compliance with 20 C.F.R. § 404.1560(b)(2), he should proceed to consider, and perhaps develop the record further regarding, what the specific mental demands of the jobs were and whether Cheney could perform those demands during the alleged period of disability.  If the ALJ determines that Cheney could not perform the mental demands of these jobs during the alleged disability period, or if he determines that the jobs constituted "unsuccessful work attempts," the ALJ should proceed to the fifth and final step of the sequential evaluation process.

## II.    RFC Determination

Cheney next contends that the ALJ's mental RFC assessment is not supported by substantial evidence, and does not sufficiently reflect the severity of Cheney's mental health issues.  The Commissioner focuses on Cheney's credibility, and argues that Cheney's arguments are internally contradictory and seek to impose impractical burdens on the agency.

In assessing Cheney's RFC, the ALJ considered the medical opinions of psychologists Dr. Richard Toye and Dr. Elizabeth Hess, each of whom interviewed and conducted psychological evaluations of Cheney.  (AR 360-65, 434-41.)  The ALJ also considered the opinion of state agency consultative psychologist J. Coyle (AR 366-83), who reviewed the relevant evidence and completed a psychiatric review technique form and mental RFC assessment of Cheney.  (AR 366-83.)  The ALJ ultimately "adopt[ed]" Dr. Coyle's opinion, afforded "[g]reater weight" to Dr. Toye's opinion, and afforded

"little weight" to Dr. Hess's opinion.  (AR 16-17.)

Dr. Hess evaluated Cheney in January 2010, and concluded that, as a result of Cheney's schizoaffective disorder and borderline personality disorder, she would be markedly limited or effectively precluded from interacting appropriately with the public, accepting instructions and responding appropriately to criticism from supervisors, and completing a normal workday and workweek without interruptions.  (AR 440-41.)  In the area of social functioning, Dr. Hess opined:

> [Cheney] will have significant difficulty interacting appropriately with others.  She is likely to become anxious when interacting with others.  At such times she is likely to have very poor focus and concentration.  At other times she is hypersensitive and may become unreasonably irritable.  She is socially avoidant and prefers to stay in her room.

(AR 438.)  Dr. Hess added that Cheney had not succeeded "in any work-like situation," and "[h]er only independent employment was doing factory work[, but] [s]he was terminated after three months because she could not stay focused on the job."  (*Id.*)

Similarly, Dr. Toye – who evaluated Cheney in May 2008, over a year prior to Dr. Hess – concluded that Cheney's relationships with co-workers and supervisors "will be contentious[,] and she will respond with irritability and anger to supervisory feedback as a result of her personality disorder."  (AR 363.)  Dr. Toye added:

> [Cheney] cannot establish effective interpersonal relationships.  While she behaves appropriately in the interview setting, her personal relationships all are charged, mostly in a negative fashion.  She becomes too intensely involved, perceives others as critical, and is critical of others.

(*Id.*)  Nonetheless, Dr. Toye concluded that Cheney could "regularly attend work and follow a schedule."  (*Id.*)

Dr. Coyle, the state agency psychologist, evaluated Cheney in June 2008, and noted that Cheney "is paranoid, has difficulty focusing, gets distracted easily, has issues working with others, gets delusional, hears voices, [and] has thoughts of hurting herself." (AR 378.) Dr. Coyle concluded that "psych is severe. Dx are borderline personality disorder (3010) and polysubstance abuse (3040)." (AR 382.) Despite these findings, Dr. Coyle concluded that Cheney is only "moderate[ly]" limited in her ability to maintain social functioning and only "mild[ly]" limited in her activities of daily living and in maintaining concentration, persistence, and pace (AR 376); and is able to "engage in brief superficial or casual interactions with the general public" and "participate in typical interactions with coworkers and supervisors while completing routine tasks" (AR 382).

The regulations provide that, in general, "more weight" is given to the opinion of a medical source who has examined the claimant than to the opinion of a source who has not. 20 CFR § 404.1527(d)(1); *see Havas v. Bowen*, 804 F.2d 783, 786 (2d Cir. 1986) ("opinions of nonexamining medical personnel cannot in themselves constitute substantial evidence overriding the opinions of examining physicians"). Additionally, while the findings of non-examining analysts can, and often do, provide valuable supplemental support for an ALJ's decision, they should generally be afforded relatively little weight in the overall disability determination. *See Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that . . . reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant."). Here, although

none of the psychologists whose reports the ALJ referenced in the RFC-assessment portion of his opinion had an ongoing treatment relationship with Cheney, Drs. Hess and Toye at least met with and interviewed her on one occasion.  In contrast, state agency consultative psychologist Dr. Coyle merely reviewed the records in existence at the time of his report and formulated an opinion based thereon.  The ALJ should have acknowledged this difference and considered its effect on the comparable weight of the medical opinions.

Moreover, although the ALJ stated that he gave "greater weight" to Dr. Toye's opinion, he did not address Dr. Toye's significant conclusions that (a) Cheney could not establish "effective interpersonal relationships," and (b) Cheney's relationships with co-workers and supervisors would be "contentious" and she would respond "with irritability and anger" to supervisory feedback.  (AR 363.)  These conclusions are supported by the record, which demonstrates that Cheney has experienced chronic interpersonal conflict with friends, family, student peers, and co-workers at least since adolescence.  (*See, e.g.,* AR 223, 244, 250-51, 267, 270, 275, 337-39, 346-49, 353, 358, 378, 436.)  The ALJ's RFC assessment, which includes only a limitation that Cheney can engage in "no more than brief interaction with co-workers and supervisors, but with no close supervision by a supervisor" (AR 15), does not reasonably account for Dr. Toye's conclusions with respect to Cheney's complete inability to interact appropriately with co-workers and supervisors.

More importantly, the ALJ's stated reason for giving "little weight" to Dr. Hess's opinion and for "adopt[ing]" Dr. Coyle's is flawed.  Specifically, the ALJ explained that

he afforded minimal weight to Dr. Hess's assessment "because [Cheney] . . . present[ed] an invalid MMPI profile at the time of [Dr. Hess's] evaluation."[5]  (AR 16.)  Dr. Hess did in fact opine that Cheney "produced an invalid [MMPI] profile due to an over[-]endorsement of unusual symptoms" (AR 437), but the ALJ appears to have misunderstood the import of this statement.  The ALJ apparently interpreted this statement to mean that Dr. Hess was unable to formulate an expert medical opinion with respect to Cheney, but the record does not support this understanding, as Dr. Hess's opinion itself explains that Dr. Hess treated the invalid MMPI profile as a "cry for help" profile, and then administered the Rotter Incomplete Sentence Test.  (*Id.*)  The results of that Test, according to Dr. Hess, were useful, revealing scores indicating the presence of "significant psychiatric maladjustment" and answers demonstrating "themes of low self[-]esteem, helplessness and hopelessness, low ego mastery, family conflict, extreme need for support from external sources, and extreme distrust of others."  (*Id.*)

Furthermore, the ALJ appears to have wrongly questioned the strength of Dr. Hess's and Dr. Toye's respective opinions in part because of their statements regarding Cheney's veracity and over-reporting of symptoms.  Specifically, the ALJ stated as follows: (a) Cheney's credibility was "called into question by Dr. Toye's observation . . . that she appeared to [be] over-reporting symptoms"; and (b) "Dr. Hess' statement . . . that [Cheney's] presentation was somewhat different than the history which she describe[d]" "call[ed] into question" Cheney's truthfulness.  (AR 16.)  But the reports of both Dr.

---

[5]  An "MMPI profile" is a personality profile determined based on results from the Minnesota Multiphasic Personality Inventory ("MMPI") test.  STEDMAN'S MEDICAL DICTIONARY 1217 (28th ed. 2006).

Toye and Dr. Hess clearly indicate that, in making their opinions with respect to Cheney's ability to interact with supervisors and co-workers, they took into account Cheney's over-reporting of symptoms and either included that in their ultimate conclusions or made their conclusions despite such over-reporting. For example, Dr. Hess noted that "[Cheney's] presentation in the interview is somewhat different than the history which she describes," and that the hallucinations of which Cheney complained "would be highly unusual unless she was suffering from the effects of an alcohol psychosis," which "did not appear to be the case." (AR 438.) And Dr. Toye noted that "[Cheney's] responses . . . represent an over-reporting bias," and that "[Cheney's] . . . hallucinations may signal a psychotic disorder, but the age of onset is extremely unusual, the lack of progression of symptoms untreated over time is questionable, and there is no observable impact of the hallucinations which she reports as ongoing." (AR 360, 363.) The Third Circuit has held that, in cases like this, where the evidence reveals malingering or manipulation by a claimant with a personality disorder, the ALJ may not substitute his lay opinion regarding the claimant's credibility for that of a medical expert, given that individuals with personality disorders may repeatedly lie, con others, or malinger and thus these symptoms may actually support rather than contradict the medical experts' ultimate conclusions. *See Morales*, 225 F.3d at 319.

Finally, Dr. Coyle's report was completed in June 2008, over one year prior to the completion of Dr. Hess's report in January 2010. Therefore, Dr. Coyle could not have considered Dr. Hess's opinions. The ALJ at least should have acknowledged this fact in his opinion, noting its effect on the weight afforded to each opinion. *See, e.g., Tarsia v.*

*Astrue*, No. 10-610-cv, 2011 WL 1313699, at *2 (2d Cir. Apr. 7, 2011) (ALJ erred in

placing "substantial weight" on non-examining physician's opinion where it was unclear

whether that physician reviewed all the relevant medical evidence); *Frankl v. Shalala*, 47

F.3d 935, 938 (8th Cir. 1995) (state agency consultative physician reports cannot

constitute substantial evidence to support ALJ's decision when they were not based on

the full record, which included medical records prepared subsequent to the consultative

physician's report).

 In sum, both Drs. Hess and Toye opined that Cheney would have significant

difficulty interacting with and responding to co-workers and supervisors.  The ALJ's

decision to discount these opinions is supported only by Dr. Coyle's opinion that Cheney

was merely moderately limited in her ability to interact with others.  Yet Dr. Coyle never

examined or met with Cheney; he made his opinion before Dr. Hess's opinion was made

a part of the record; and the ALJ noted that Dr. Coyle's opinion was largely based on the

opinion of Dr. Toye (*see* AR 13), but neither Dr. Coyle's opinion nor the ALJ's decision

explains why Dr. Coyle disagreed with (or failed to notice) Dr. Toye's assessment that

Cheney was unable to establish effective interpersonal relationships.  Furthermore, the

ALJ afforded "little weight" to Dr. Hess's opinion based on a factual misunderstanding of

such opinion, and wrongly questioned the strength of Dr. Hess's and Dr. Toye's

respective opinions in part due to their statements regarding Cheney's veracity and over-

reporting of symptoms.  Where, as here, evidence conflicts, the ALJ may choose which

evidence to credit, but he "cannot reject evidence for no reason or for the wrong reason."

*Morales*, 225 F.3d at 317 (internal quotation marks and citation omitted); *Russell v.*

*Sebelius*, 686 F. Supp. 2d 386, 397 (D. Vt. Feb. 2, 2010).

For these reasons, I recommend that the matter be remanded for the Commissioner

to re-weigh the relevant medical evidence in accordance with the applicable laws and

regulations.  To the extent that the Commissioner believes any of the medical

assessments discussed herein are unclear regarding the extent of Cheney's mental

limitations, or if the Commissioner finds that Dr. Coyle's or Dr. Toye's respective

assessments might be weighed differently if they included consideration of Dr. Hess's

subsequent assessment, the applicable providers should be re-contacted.

## Conclusion

For the above reasons, I recommend GRANTING Cheney's motion to reverse

(Doc. 10), and DENYING the Commissioner's motion to affirm (Doc. 11), thereby

reversing the decision of the Commissioner and remanding under sentence four of 42

U.S.C. § 405(g) for further proceedings in accordance with this ruling.

Dated at Burlington, in the District of Vermont, this 19th day of April, 2011.

/s/ John M Conroy
John M. Conroy
United States Magistrate Judge